# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| MANE SHAH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:14-cv-0624-GMN-NJK |
| vs. | ) | |
| | ) | **ORDER** |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 16), filed by Plaintiff Mane Shah.  The Department of Justice ("DOJ") responded by filing a Counter Motion for Summary Judgment, (ECF No. 18), to which Plaintiff replied, (ECF No. 19).

## I.    BACKGROUND

This case centers upon the DOJ's refusal to disclose charts, graphs, and raw data associated with a polygraph examination conducted upon Plaintiff by the FBI. (Compl., ECF No. 1).  Plaintiff is currently facing criminal charges in a case pending in Clark County District Court ("CCDC"), *Nevada v. Shah*, No. C-13-292772-1.  In connection with the criminal investigation, Plaintiff submitted to a polygraph examination, which was conducted by the FBI in conjunction with Nevada law enforcement on January 10, 2013. (Pl.'s Mot. 2:17-19, ECF No. 16).  On January 15, 2013, North Las Vegas Police Detective Robert Sullivan stated, in an affidavit accompanying a request for an arrest warrant, that he had been informed by the FBI that Plaintiff had failed the polygraph examination. (Ex. 1 to Pl.'s Mot. at 5:7-9, ECF No. 16-1).  On January 28 and 29, 2013, the Las Vegas Review Journal and CBS Las Vegas each reported that, according to a North Las Vegas police report, Plaintiff had failed a polygraph examination regarding the underlying criminal allegations. (Ex. 2 to Pl.'s Mot. at 2-3, ECF No. 16-2).

On January 23, 2013, Clark County Deputy District Attorney Michelle Fleck wrote an email to Plaintiff's counsel indicating that the FBI would disclose the "raw data" associated with the polygraph examination if ordered to do so by Judge Jerome Tao, the presiding judge in the CCDC criminal case. (Admin. Rec. at 7). On February 13, 2014, Judge Tao issued an order requiring that the FBI provide Plaintiff with "all of the raw data, charts, and graphs associated with the January 10, 2013, polygraph examination." (Admin. Rec. at 5). On March 10, 2014, Plaintiff's counsel sent a letter to the FBI formally requesting the "charts, graphs, and raw data associated with [the polygraph examination]." (Admin. Rec. at 2).

On March 26, 2014, an internal report was issued by Alex J. Turner, an assistant director of the FBI's Security Division, which stated that releasing the data underlying the polygraph examination would "significantly risk circumvention of the FBI's law enforcement ability, by arming those intent on breaking the law with information about FBI polygraph questions, charts, reports, and equipment." (Admin. Rec. at 9). This finding was based on the conclusion that the efficacy of polygraph examinations is substantially reliant on presenting questions in specific patterns and sequences that are not known to the examinee, and that publicly disclosing the underlying questions, charts, and graphs would allow future examinees to employ effective countermeasures against polygraph tests. (Admin. Rec. at 8).

After considering Plaintiff's request letter, Judge Tao's order, and Mr. Turner's report, United States Attorney Daniel Bogden denied Plaintiff's request, stating that the charts, graphs, and raw data associated with the polygraph examination were subject to the law enforcement privilege. (Admin. Rec. at 10). In his denial letter, U.S. Attorney Bogden cited 28 C.F.R. 16.26(b)(5), which provides that requests for disclosures must be denied if "disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." (*Id*.).

On April 23, 2014, Plaintiff filed the instant action which requests that the Court set aside the DOJ's denial of his disclosure request and require that the FBI disclose the raw data, charts, and graphs associated with the January 10, 2013, polygraph examination.

## II.   LEGAL STANDARD

### A.   Judicial Review of Administrative Decisions

The Administrative Procedure Act authorizes judicial review where a person "suffer[s] legal wrong because of agency action, or [is] adversely affected or aggrieved by agency action within the meaning of [the] relevant statute." 5 U.S.C. § 702.  The reviewing district court is, in turn, empowered to set aside a final agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  "The arbitrary and capricious standard is highly deferential, presuming the agency action to be valid and requires affirming the agency action if a reasonable basis exists for its decision." *Kern County Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006) (internal quotation omitted).  Even so, the reviewing court must set aside an agency decision where "there is no evidence to support the decision or . . . the decision was based on an improper understanding of the law." *Kazarian v. United States Citizenship and Immigration Services*, 596 F.3d 1115, 1118 (9th Cir. 2010).

### B.   Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict

in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, the Court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid

summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.   DISCUSSION

Plaintiff argues that the DOJ's refusal to disclose the polygraph examination materials was arbitrary and capricious, failing to adhere to the standards regarding the law enforcement privilege.  Alternatively, Plaintiff argues that disclosure of the requested information is required pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963).  The Court will address each of these arguments in turn.

### A.   Judicial Review of the DOJ's Action

As an initial matter, the parties dispute whether the Court may consider evidence outside the administrative record in its review of the DOJ's decision.  "Generally, judicial review of agency action is limited to review of the administrative record." *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988) *amended*, 867 F.2d 1244 (9th Cir. 1989).  However, the Ninth Circuit has held that it is appropriate for a district court to look outside the administrative record: (1) "when necessary to explain the agency's action"; (2) "when it appears the agency has relied on documents or materials not included in the record"; (3) "when supplementation of the record is necessary to explain technical terms or complex subject matter involved in the agency action"; or (4) "when plaintiffs make a showing of agency bad faith." *Id.* at 1436-37.

Plaintiff argues that the Court's review should not be limited to the administrative record, because the DOJ initially stated, prior to receiving Plaintiff's formal request, that it would disclose the requested materials. The Court notes that Plaintiff has not produced any statements from the FBI or DOJ indicating that the polygraph information would be disclosed. Instead, Plaintiff relies purely upon Deputy District Attorney Fleck's email stating that FBI Agent McCamey indicated that the FBI would be willing to release the raw polygraph data if ordered to do so by Judge Tao. (Admin. Rec. at 7). Plaintiff has provided no evidence demonstrating that Agent McCamey or any other employee of the FBI or DOJ intended to hinder Plaintiff's investigation or discovery efforts. Furthermore, Plaintiff does not claim that he has suffered any prejudice as a result of the representations contained in Ms. Fleck's email. Thus, Plaintiff has failed to make a showing of bad faith on the part of the FBI or DOJ, and has not provided a sufficient basis for the Court to extend its review beyond the scope of the administrative record.[1]

As to Plaintiff's 5 U.S.C. § 702 challenge, the DOJ's regulations prohibit its employees from responding to discovery demands regarding litigation in which the United States is not a party. 28 C.F.R. § 16.22. Pursuant to these regulations, any state court order requiring the production of materials contained in the DOJ's files must be addressed by the "U.S. Attorney for the district where the issuing authority is located." *Id.* at § 16.22(b). The relevant U.S. Attorney is not authorized to approve the disclosure if it "would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." *Id.* at § 16.26(b)(5).

However, these regulations do not create an independent basis for the DOJ to assert

---

[1] Nevertheless, after reviewing the additional documents attached to Plaintiff's Motion, the Court notes that consideration of these exhibits would not have altered the instant disposition.

1   privilege. *Kwan Fai Mak v. F.B.I.*, 252 F.3d 1089, 1092 (9th Cir. 2001); *Commonwealth of*

2   *Puerto Rico v. United States*, 490 F.3d 50, 62 (1st Cir. 2007).  In addition to reviewing the

3   decision for compliance with DOJ regulations, the Court must also determine whether it was

4   arbitrary and capricious for the DOJ to withhold the requested information pursuant to the law

5   enforcement privilege. *Puerto Rico*, 490 F.3d at 62.  For an agency to properly invoke the

6   privilege: (1) the head of the department with control over the requested information must

7   formally claim that the information is privileged, (2) that claim must be based on the official's

8   personal consideration of the requested information, and (3) the official must specify the

9   information that is subject to the privilege and provide an explanation as to why the privilege

10  applies. *In re Sealed Case*, 856 F.2d 268, 271 (D.C. Cir. 1988).

11          If the Court finds that the law enforcement privilege was properly invoked, it must then

12  determine whether the agency was arbitrary and capricious in concluding that the "federal

13  government's interest in preserving the confidentiality of sensitive law enforcement

14  techniques" outweighed "the requesting party's interest in disclosure." *Puerto Rico*, 490 F.3d at

15  64; *see also In re Sealed Case*, 856  F.2d at 272.

16          Plaintiff does not contend that the DOJ failed to follow its regulations or that its

17  invocation of the law enforcement privilege was procedurally inadequate.  Instead, Plaintiff

18  argues that the law enforcement privilege does not actually apply in this case, because his

19  interest in the disclosure of the polygraph information outweighs the government's interest in

20  confidentiality.  In support, Plaintiff asserts that the DOJ's interest in confidentiality is minimal

21  because (1) Dr. Shah will not likely undergo additional polygraph examinations in this case;

22  and (2) Deputy District Attorney Fleck indicated that the FBI would disclose the requested

23  information if ordered by the Clark County District Court.  Concordantly, Plaintiff claims that

24  he holds a substantial interest in the disclosure of the polygraph materials because (1) the

25  results of the polygraph test were used to establish probable cause for his arrest and (2) the jury

1    pool may have been tainted by news articles mentioning that he failed a polygraph test.

2        The Court finds Plaintiff's attempts to downplay the government's interest to be

3    misplaced.  Though Plaintiff may be correct that *he* will not undergo any more polygraph

4    examinations *in this case*, the interests underlying the law enforcement privilege are not limited

5    to a single investigation or defendant.  Indeed, courts have recognized that the privilege may be

6    applied in order to ensure the efficacy of investigative techniques in future cases.  *See, e.g.*,

7    *Puerto Rico*, 490 F.3d 50, 64 (finding that the law enforcement privilege is properly utilized

8    when disclosure would "jeopardize future criminal investigations").  In this case, the DOJ's

9    rejection of Plaintiff's request was based not on the concern that Plaintiff himself might use the

10   information to thwart future polygraph examinations, but rather that other individuals would

11   use the data for that end.  In his March 28, 2014, letter, U.S. Attorney Bogden cited 28 C.F.R.

12   16.26(b)(5) as the basis for denying Plaintiff's request.  This provision states that the relevant

13   officer must deny a request for information when disclosure would reveal "investigative

14   techniques and procedures the effectiveness of which would thereby be impaired." 28 C.F.R.

15   16.26(b)(5).

16       The assertion of the law enforcement privilege is supported by Mr. Turner's letter to

17   U.S. Attorney Bogden which stated, *inter alia*, that releasing the questions, charts, and reports

18   would reveal the "structure, pattern, and sequence of questions" that are essential to the

19   effectiveness of polygraph examinations. (Admin. Rec. at 8).  The letter goes on to reason that

20   publicly disclosing these materials could "hinder future effectiveness by allowing individuals

21   intent on pursuing criminal acts to know information about the polygraph examinations that

22   would allow them to employ countermeasures that could defeat the usefulness of polygraph

23   examinations." (*Id.*).

24       Therefore, the evidence on the record demonstrates that the DOJ's assertion of privilege

25   did not arise out of a concern that Plaintiff himself would thwart future polygraph

examinations, but rather that revealing the charts, graphs, and raw data in this case would hinder the effectiveness of polygraph examinations in future, unrelated cases.  Therefore, Plaintiff's argument that disclosure of the requested information will not hinder the investigation into his alleged criminal acts is immaterial to the application of the law enforcement privilege in this case.  As it is well established that the law enforcement privilege may be asserted to preserve the future effectiveness of an investigative technique, *see, e.g.*, *Puerto Rico*, 490 F.3d 50, 64, and Plaintiff does not challenge the DOJ's conclusion that prior knowledge of questions, patterns, and sequencing could assist a criminal suspect in thwarting a polygraph examination, the Court finds that the DOJ's denial was based on a legitimate and substantial government interest in confidentiality.

Additionally, the fact that Deputy District Attorney Fleck told Plaintiff that the FBI would disclose the information if ordered by Judge Tao bears no relevance to the weight of the government's interest in this case.  Ms. Fleck's email explains that Agent McCamey indicated that the FBI was willing to release the raw data, but does not discuss the risk to future investigations that could arise from the release of this information. (Admin. Rec. at 7).  Even if this email proved, as Plaintiff suggests, that the FBI was initially inclined to disclose the information, such a fact would not negate the substantial confidentiality interest upon which the DOJ ultimately based its assertion of privilege.  Therefore, the Court finds that this evidence does not demonstrate that the DOJ's decision was arbitrary or capricious.

The Court also finds that Plaintiff's arguments regarding the weight of his own interest fail to show that the DOJ's denial was arbitrary and capricious.  Plaintiff asserts that the arrest warrant in this case was partially based on the results of the polygraph examination.  However, Plaintiff fails to indicate how this implicates his interest in the disclosure of the requested polygraph materials.  Plaintiff does not argue that probable cause would not have been established without the results of the polygraph test or that the requested materials could assist

in his defense.  Indeed, Plaintiff's formal request to the FBI directly acknowledged that the polygraph materials were "not admissible at trial." (Admin. Record. at 2).  Therefore, Plaintiff has failed to show how the requested materials could possibly aid in his defense to the underlying criminal charges.

Plaintiff also claims that the news articles discussing the polygraph results have tainted the jury pool.  Again, Plaintiff fails to discuss how the release of the raw data, charts, and graphs used in the polygraph examination relates to this issue.  Plaintiff's observation is especially confounding, as Plaintiff stated in his formal request to the FBI that he would not publicly disseminate the materials and conceded that the information was inadmissible at trial. (Admin. Rec. at 2-3).  Because there is no evidence on the record indicating that the possibility of a tainted jury pool could be alleviated by the disclosure of the polygraph materials, the Court finds that the DOJ's decision was not arbitrary or capricious as to the weight attributed to Plaintiff's interest.

Accordingly, because the DOJ accurately concluded that releasing the polygraph materials could jeopardize future investigations and Plaintiff failed to demonstrate that these materials were relevant to his defense, the Court finds that the DOJ correctly determined that Plaintiff's interest in disclosure was outweighed by the government's interest in confidentiality. Therefore, the DOJ's denial of Plaintiff's request for the raw data, charts, and graphs underlying the polygraph examination was not arbitrary, capricious, an abuse of discretion, or contrary to law.

### B.   Required Disclosure Under *Brady v. Maryland*

In addition to his contentions pertaining to the law enforcement privilege, Plaintiff alternatively argues that disclosure of the polygraph materials is mandatory pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).  In *Brady*, the Supreme Court held that a prosecutor's failure to disclose exculpatory or impeachment evidence within her possession violates a defendant's

1    right to due process. *Brady*, 373 U.S. at 87.  "There are three components of a Brady violation:

2    'The evidence at issue must be favorable to the accused, either because it is exculpatory, or

3    because it is impeaching; that evidence must have been suppressed by the State, either willfully

4    or inadvertently; and prejudice must have ensued.'" *United States v. Price*, 566 F.3d 900, 907

5    (9th Cir. 2009) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

6         The Nevada Supreme Court has repeatedly held that polygraph results are inadmissible

7    absent a stipulation by the parties to a case. *E.g., Jackson v. State*, 997 P.2d 121, 122 (Nev.

8    2000) (citing *Domingues v. State*, 917 P.2d 1364, 1373 (Nev. 1996); *Corbett v. State*, 584 P.2d

9    704, 705 (Nev. 1978).  Indeed, under federal law, it is well established that a prosecutor's

10   failure to disclose polygraph results does not constitute a *Brady* violation if those results would

11   be inadmissible at trial. *E.g.*, *Wood v. Bartholomew*, 516 U.S. 1, 6 (1995); *Smith v. Baldwin*,

12   510 F.3d 1127, 1148 (9th Cir. 2007).  In this case, Plaintiff has conceded that the requested

13   polygraph materials are inadmissible. (Admin. Rec. at 2).  Therefore the Court finds that the

14   requested materials are not subject to the mandatory disclosure requirements of *Brady*.

15        Accordingly, because the Court finds that the DOJ's denial was not arbitrary and

16   capricious, and that the requested materials need not be disclosed pursuant to *Brady*, summary

17   judgment in favor of the DOJ is warranted.

18   **IV.    CONCLUSION**

19        **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No.

20   16), is **DENIED**.

21        **IT IS FURTHER ORDERED** that the DOJ's Counter Motion for Summary Judgment,

22   (ECF No. 18), is **GRANTED**.  The Clerk shall enter judgment accordingly and close the case.

23        **DATED** this 2nd day of February, 2015.

24

25   _____

Gloria M. Navarro, Chief Judge
United States District Court